# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

JERMAINE JACKSON,

       Petitioner,

v.                                      Case No. 8:15-cv-86-T-36AEP

SECRETARY, DEPARTMENT
OF CORRECTIONS,

       Respondent.

_____/

## **ORDER**

Petitioner Jermaine Jackson, a Florida inmate, filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254 (Dkt. 1) challenging his Polk County convictions. In the response (Dkt. 8), Respondent agrees that the petition is timely. Jackson did not file a reply. Upon consideration, the petition will be DENIED.

### **Procedural History**

Jackson was convicted after a jury trial of two counts of robbery with a weapon. (Dkt. 10, Ex. 3). The state court sentenced him to concurrent terms of 30 years in prison. (Dkt. 10, Ex. 5, pp. 266-67). The state appellate court *per curiam* affirmed the convictions and sentences. (Dkt. 10, Ex. 8). Jackson's first motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 was denied. (Dkt 10, Exs. 11, 12). The state appellate court *per curiam* affirmed the denial of relief. (Dkt. 10, Ex. 14). Jackson's second Rule 3.850 motion was also denied. (Dkt. 1, pp. 29-30, Dkt. 16-1). Jackson did not appeal the denial.

### **Factual Background; Trial Testimony**

On the night of April 5, 2010, Steven Long drove William Towles home from the Pizza Hut where they worked. While they were outside the home, Deandre Wooden and Matthew Conners entered the yard. Wooden pointed a gun at Long and Towles while Conners took personal belongings from their pockets. The victims saw Wooden and Conner leave in a white sedan. Towles saw Wooden get into the front passenger seat and Conners get into the back seat.

On April 19, 2010, two men in a white sedan attempted to pay at a Pizza Hut drive-through by presenting a check in Towles' name, along with Towles' identification, to cashier Don Greiner. Greiner was friends with Towles, who worked at the same Pizza Hut, and knew that the man with Towles' identification was not Towles. Greiner took down the car's license plate, and reviewed the restaurant's call log. The number he identified as possibly having called in the order matched Jackson's cell phone number.

Police took Jackson into custody and searched his home on April 26, 2010. They found Towles' Social Security card among Jackson's personal papers. Jackson told police that the robbery was committed by Conners, his acquaintance, and Wooden, his girlfriend's nephew. Jackson also said that he loaned Conners and Wooden his girlfriend's car, but that he was not present during the robbery. Jackson agreed to make a controlled call to Wooden to ask about what happened. But during the call, Jackson would not ask Wooden who was driving the car.

The State alleged that Jackson planned the robbery, provided the gun, and drove Wooden and Conners to and from the scene in his girlfriend's car. Wooden testified for the State that as Jackson was driving Wooden and Conners back from the store that night, Jackson talked about robbing two people they saw standing in a yard and gave Wooden a gun. Wooden testified that he and Conners committed the robbery while Jackson waited in or near the car, and that Jackson drove them away from the scene. Conners testified for the defense that Jackson did not participate in the robbery. He

testified that after he and Wooden dropped Jackson off "at a girl's house," he and Wooden talked about robbing someone and decided to rob the victims. Conners testified that they picked Jackson up later. The jury convicted Jackson as a principal of two counts of robbery with a weapon.[1]

## Standard Of Review

Habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000). A decision is an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."

---

[1] Florida's law on principals provides:

Whoever commits any criminal offense against the state, whether felony or misdemeanor, or aids, abets, counsels, hires, or otherwise procures such offense to be committed, and such offenses is committed or is attempted to be committed, is a principal in the first degree and may be charged, convicted, and punished as such, whether he or she is or is not actually or constructively present at the commission of such offense.

§ 777.011, Fla. Stat.

*Id.* at 413.

The AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694. *See also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

The state appellate court affirmed the denial of postconviction relief in a *per curiam* decision. This decision warrants deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore,* 278 F.3d 1245, 1254 (11th Cir. 2002). *See also Richter,* 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

### Ineffective Assistance Of Counsel

Jackson alleges ineffective assistance of trial counsel. His claims are analyzed under *Strickland v. Washington*, 466 U.S. 668 (1984). Jackson must demonstrate that his counsel performed deficiently in that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-88. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. Additionally, "a court deciding an actual ineffectiveness claim must judge the reasonableness of

counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.*

Jackson must also show that he suffered prejudice by demonstrating "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Obtaining relief on a claim of ineffective assistance of counsel is difficult because federal habeas review is "doubly" deferential to counsel's performance and the state court's decision. *Richter*, 562 U.S. at 105.

## Discussion

Ground One

Jackson alleges that trial counsel was ineffective in failing to raise a double jeopardy objection. He contends that he was charged with two counts of robbery based on a single criminal act. The state court denied his claim, finding, "Defendant is mistaken. There were two victims of the robbery. Each count references a separate victim. . . . As such, there is no double jeopardy violation." (Dkt. 10, Ex. 12, p. 83).

The Double Jeopardy Clause "protects against a second prosecution for the same offense after acquittal, against a second prosecution for the same offense after conviction, and against multiple punishments for the same offense." *Justices of Boston Mun. Ct. v. Lydon*, 466 U.S. 294, 306-07 (1984). "With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter*, 459 U.S. 359, 366 (1983).

Under Florida law, "[w]hat is dispositive" in determining whether more than one robbery has occurred is "whether there have been successive and distinct forceful takings with a separate and

independent intent for each transaction." *Brown v. State*, 430 So.2d 446, 447 (Fla. 1983). *Cf. Brown v. State*, 1 So.3d 1231, 1233 (Fla. 2d DCA 2009) (stating that a "single taking from one [cash] register supports only one charge, and the presence of two employees does not transform one robbery into two."). The State presented evidence that Jackson's co-defendants robbed both Long and Towles, taking a cell phone and wallet from Towles' pockets and also taking a wallet from Long's pocket. (Dkt. 10, Ex. 2, Vol. II, pp. 259-60, 273-74). Because each separate and distinct taking constituted an offense under Florida law, Jackson was not subject to multiple punishments for the same offense. Accordingly, Jackson has not shown that counsel was ineffective in failing to allege a double jeopardy violation. The state court's rejection of Jackson's ineffective assistance claim was not an unreasonable application of *Strickland* or based on an unreasonable determination of the facts. Jackson is not entitled to relief on Ground One.

Ground Two

Grounds Two and Eight involve the meaning of the term "weapon." Florida law addresses the use of a firearm or a deadly weapon, distinct from the use of a weapon, in the commission of a robbery:

> (2)(a) If in the course of committing the robbery the offender carried a firearm or other deadly weapon, then the robbery is a felony of the first degree, punishable by imprisonment for a term of years not exceeding life imprisonment or as provided in s. 775.082, s. 775.083, or s. 775.084.

> (2)(b) If in the course of committing the robbery the offender carried a weapon, then the robbery is a felony of the first degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

§ 812.13, Fla. Stat.

The robbery statute does not define "weapon." Therefore, Florida courts have frequently looked to § 790.001(13), Fla. Stat., "to determine whether a particular object constitutes a 'weapon'

for purposes of section 812.13(2)(b)." *Williams v. State*, 651 So.2d 1242, 1242-43 (Fla. 2d DCA

1995). That section defines weapon as "any dirk, knife, metallic knuckles, slungshot, billie, tear gas

gun, chemical weapon or device, or other deadly weapon **except a firearm** or a common pocketknife,

plastic knife, or blunt-bladed table knife." § 790.001(13), Fla. Stat. (emphasis added).

However, the standard jury instruction for robbery with a weapon provides that a weapon is

"defined to mean any object that could be used to cause death or inflict serious bodily harm." Fla. Std.

Jury Inst. (Crim.) 15.1. And the Florida Supreme Court has stated that although the robbery statute

does not define "the terms 'firearm' and 'weapon,' the definitions for those terms contained in the

Florida Standard Jury Instructions are a correct statement of the law." *Dale v. State*, 703 So.2d 1045,

1046 (Fla. 1997). *See also Gust v. State*, 558 So.2d 450, 452 (Fla. 1st DCA 1990) ("[T]he definition

of 'weapon' most pertinent to an armed robbery charge is found in the Florida Standard Jury

Instructions for armed robbery.").

In Ground Two, Jackson claims that trial counsel was ineffective in failing to object when the

State argued about, and the jury was instructed on, "an uncharged offense of robbery with a weapon."

(Dkt. 1, p. 7). It appears that Jackson intends to raise the argument brought in ground two of his

postconviction motion, in which he alleged that counsel should have objected because a gun qualifies

as a "firearm," not a "weapon." The state court denied this claim:

> Defendant argues that because a gun is not a weapon, the State could not argue such
> in closing. The Court finds that a gun does qualify as a weapon as a weapon is defined
> as "any object that could be used to cause death or inflict serious bodily injury."
> Transcript at 419-20. A gun could be classified as a weapon and the State's argument
> and the Court's instruction were proper.

(Dkt. 10, Ex. 12, p. 83).

In Ground Eight, Jackson asserts that trial counsel was ineffective in failing to object because

the instruction on robbery omitted critical information. The jury was instructed that if "you find the

defendant carried a weapon in the course of committing the robbery you should find him guilty of robbery with a weapon." (Dkt. 10, Ex. 2, Vol. III, p. 419).

The standard jury instruction provides that if "you find that the defendant carried a weapon that **was not a firearm or a deadly weapon** in the course of committing the robbery, you should find [the defendant] guilt of robbery with a weapon." Fla. Std. Jury Inst. (Crim.) 15.1 (emphasis added).

In ground eight of his postconviction motion, Jackson alleged that counsel was ineffective in not objecting to the exclusion of the "was not a firearm or a deadly weapon" language. He claimed, that, had it been given, the jury would have acquitted him because there was no evidence that a weapon other than a firearm was used. The state court denied his claim:

> In claim 8, Defendant argues that trial counsel failed to object to an improper jury instruction. Defendant claims that the part instructing the jury that if they find that the Defendant did not use a firearm or deadly weapon, they can then determine if he used a weapon [sic]. The Court finds that the instruction was not improper.

(Dkt. 10, Ex. 12, pp. 84-85).

Whether a gun constitutes a "weapon" for the charge of robbery with a weapon is a question of state law. In evaluating Jackson's claims, the state court specifically found that a gun does qualify as a weapon, and that the jury instruction was not improper. Deference must be given to the state court's construction and application of Florida law. In *Burgess v. McNeil*, the petitioner raised a similar argument that "the statutory definition of weapon excludes a firearm" and that the jury instructions therefore "incorrectly allowed the jury to find him guilty of robbery with a weapon if the jury found that a firearm was used in the robbery." 357 Fed. App'x 206, 211 (11th Cir. 2009). In affirming the district court's denial of Burgess' federal habeas petition, the Eleventh Circuit concluded that his claim of ineffective assistance for not objecting to the instruction must fail because "in response to Burgess' first motion for post-conviction relief, the circuit court found that there was no

error under state law in . . . the jury instructions." *Id.* at 212. The Court further explained that because "the Florida courts have told us" that the jury instructions were "correct under Florida law," counsel's failure to challenge the instructions "cannot be considered deficient" and Burgess "cannot show that he suffered prejudice resulting from his attorney's performance." *Id.* Accordingly, Jackson has not established that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claims.

Additionally, Jackson claims within Ground Two that counsel should have objected to the jury instruction because the instrument used in the robbery was merely a toy gun that "did not qualify within the legal definition of a weapon as a matter of law in this case." (Dkt. 1, p. 7.). Jackson did not specifically present this claim to the state court in ground two of his postconviction motion. (Ex. 11, pp. 12-14). Therefore, he failed to satisfy the requirement that he exhaust his claim in state court before presenting it in his federal habeas petition. *See* 28 U.S.C. § 2254(b)(1)(A). As Jackson cannot return to state court to present this claim in an untimely postconviction motion, *see* Fla. R. Crim. P. 3.850(b), the claim is procedurally defaulted. *See Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001) ("If the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief."). Jackson does not establish that either the cause and prejudice or fundamental miscarriage of justice exception applies to overcome the default. *See id*. But even if the claim's merits are reached, for the reasons discussed in Grounds Three and Four, *infra*, Jackson fails to establish that counsel was ineffective in failing to present an argument or objection on the basis that the gun was a toy. Jackson is not entitled to relief on Ground Two or Ground Eight.

Ground Three:

Jackson argues that trial counsel was ineffective in failing to argue in his motion for judgment

of acquittal that a "toy BB gun" was used, "as opposed to a real gun, as the jury was led to believe."

(Dkt. 1, p. 8). The state court denied this claim:

> In claim 3, Defendant argues that trial counsel was ineffective for failing to file an adequate Motion for Judgment of Acquittal. Defendant writes that trial counsel should have argued that the Defendant used a toy BB gun as opposed to a real gun. There was no evidence presented that the gun was a toy. Both Mr. Long and Mr. Towles testified that the gun was chrome with a black handle. Transcript at 259; 272. As there was no basis for arguing that the gun used was a toy, such an argument would have been improper for a Motion for Judgment of Acquittal.

(Dkt. 10, Ex. 12, p. 83).

The trial transcript supports the state court's conclusion that no evidence indicated that the gun was a toy. Therefore, counsel could not have been ineffective in failing to argue that the State had not proved the charges of robbery with a weapon on this basis. *See, e.g., State v. Williams*, 742 So.2d 509, 511 (Fla. 1st DCA 1999) ("A motion for judgment of acquittal is designed to challenge the legal sufficiency of the evidence . . . the court should not grant the motion unless, when viewed in a light most favorable to the state, the evidence does not establish the prima facie case of guilt." (citation omitted)).

Further, in affirming the denial of this claim, the state appellate court cited *Mitchell v. State*, 698 So.2d 555 (Fla. 2d DCA), *approved by* 703 So.2d 1062 (Fla. 1997). *Mitchell* concerned multiple convictions involving the use of a dangerous or deadly weapon. Evidence that 1) the defendant used a BB gun, 2) he implied through words and actions that the gun was loaded and operable, and 3) nothing would have led the victims to believe the BB gun was not a loaded and operable, deadly or dangerous weapon, was sufficient to sustain the convictions. *Id.* at 562. Here, the State presented testimony that Wooden pointed the gun at Towles and Long and held it to Towles' head, told them to get down and not to move, and said he was going to rob them and would shoot them. (Dkt. 10, Ex. 2, Vol. I, pp. 173, 178; Vol. II, pp. 259, 263-65, 272, 274). No part of the victims'

testimony reflects that they had any reason to believe the gun was not loaded and operable, and they both testified that they were in fear. (Dkt. 10, Ex. 2, Vol. II, pp. 260, 273). Accordingly, Jackson fails to show a reasonable probability that, even if counsel argued that the instrument was a BB gun, his motion for judgment of acquittal would have been successful. Jackson has not shown that the state court's denial of his claim involved an unreasonable application of *Strickland* or was based on an unreasonable determination of the facts. He is not entitled to relief on Ground Three.

Ground Four

Jackson claims that trial counsel was ineffective in failing to argue that he used a toy gun. He presented this argument in ground four of his postconviction motion. He also claims that the "toy BB gun" was not "properly introduced into evidence" so that the jurors could determine it was not a weapon. (Dkt. 1, p. 10). This allegation is interpreted as presenting the claim, also raised in ground four of his postconviction motion, that counsel was ineffective in not moving to compel the State to produce the gun, which he claims was in the State's possession. The state court denied these claims:

> In claim 4, Defendant argues that trial counsel was ineffective for failing to argue that the Defendant used a toy gun. Again, there was nothing in the record to indicate that the gun was a toy. In fact, the evidence indicates otherwise. Transcript at 259; 272. Deandre Wooden, Matthew Conners, nor the Defendant testified that the gun was a toy. Defendant has not established deficient performance or prejudice.

(Dkt. 10, Ex. 12, pp. 83-84).

No evidence at trial indicated that police recovered the gun used during the robberies, and Jackson has not substantiated his conclusory claim that the State possessed the gun. Accordingly, Jackson cannot demonstrate that counsel was ineffective in failing to compel the State to produce it. Furthermore, as addressed, the record contains no support for Jackson's argument that the gun was a "toy BB gun," and Jackson has not shown that he could not have been convicted even if a BB gun was used. *See Mitchell*, 698 So.2d 555. Jackson therefore fails to show that the state court's decision

was an unreasonable application of *Strickland* or was based on an unreasonable determination of the facts. He is not entitled to relief on Ground Four.

Ground Five

The State alleged that Jackson waited while Wooden and Conners committed the robbery and drove the getaway car. But Jackson claims that he told counsel he "had been dropped off at a girl's house on the other side of town when the robbery was being committed." (Dkt. 1, p. 12). At trial, Detective Sam Bunch testified that Jackson told him he was at a girl's house, and Matthew Conners testified that he and Wooden dropped Jackson off at a girl's house, committed the robbery, and picked Jackson up. (Dkt. 10, Ex. 2, Vol. I, p. 220; Vol. II, 299-301, 303). Jackson therefore contends that trial counsel was ineffective in failing to request an alibi instruction. The state court denied this claim:

> In claim 5, Defendant argues that trial counsel failed to request an alibi instruction. Defendant claims that he was on the other side of town when the robbery was committed. Matthew Conners testified that the Defendant was dropped off at a girl's house prior to the robbery. However, Mr. Conners was impeached by the State. Prior to speaking with anybody, Mr. Conners told law enforcement that the Defendant was the driver and was in fact involved in the robbery. Transcript at 305-306. When the Defendant was making a controlled phone call to Mr. Wooden, he refused to ask Mr. Wooden who the driver of the car had been. Transcript at 209. Mr. Towles testified that after the robbery he observed Mr. Wooden get into the front passenger side of the getaway vehicle while Mr. Conners got into the rear driver's side. Transcript at 275. Such would indicate that a third person had been driving the car. There was no testimony from another person that the Defendant was with him/her at the time the robbery occurred. Even if the alibi instruction should have been read, Defendant cannot establish prejudice.

(Dkt. 10, Ex. 12, p. 84).

The state court reasonably denied this claim on *Strickland*'s prejudice prong. The prosecution presented evidence from which the jury could conclude that Jackson was present. Deandre Wooden testified that Jackson discussed robbing two people they saw in a yard, and that Jackson was waiting in the car to drive Wooden and Conners away after the robbery. (Dkt. 10, Ex. 2, Vol. I, pp. 172-74).

Towles saw the robbers get into the front passenger's seat and the back seat, suggesting that someone else was driving. (Dkt. 10, Ex. 2, Vol. II, p. 275). And during Jackson's controlled call to Wooden, Jackson did not ask Wooden who was driving that night even though Detective Bunch wrote the question on a piece of paper and repeatedly pointed at it while Jackson was talking. (Dkt. 10, Ex. 2, Vol. I, pp. 209-10, 227). Additionally, as the state court noted, Conners was impeached with his prior inconsistent statement to the police that Jackson drove the car to the scene of the robbery. (Dkt. 10, Ex. 2, Vol. II, p. 309).

Accordingly, Jackson has not established a reasonable probability that the outcome of the trial would have been different had the jury received an alibi instruction. Because Jackson has not shown that the state court's decision was an unreasonable application of *Strickland* or was based on an unreasonable determination of the facts, he is not entitled to relief on Ground Five.

Ground Six

After the jury was selected, Jackson's attorney requested that Jackson be evaluated for competency and argued that Jackson's statements to him "necessitate[d] a continuance." (Dkt. 10, Ex. 2, Vol. 1, pp. 124, 130). The trial court denied the request, stating, "I don't see any hint of incompetency." (*Id.*, p. 131).

Jackson now argues that trial counsel was ineffective in failing to request a stay of proceedings to evaluate Jackson's competency. The state court rejected Jackson's claim:

> In claim 6, Defendant argues that trial counsel was ineffective for failing to request a stay of proceedings so that Defendant's competency could be evaluated. The record indicates that the Defendant raised a competency claim the day of trial. Defendant told his attorney and then the Court that he was sleep deprived and that he could not assist his attorney adequately. The Court conducted an inquiry and determined that there was no basis to derail the trial and have Defendant evaluated. Transcript 124-131. Any motion for a stay of proceedings would have been denied. Defendant has not established deficient performance or prejudice.

(Dkt. 10, Ex. 12, p. 84).

Counsel explained to the court that he believed that a competency evaluation was necessary, and sought a continuance. In light of the trial court's determination that a competency evaluation was unnecessary, Jackson has not established that counsel would have succeeded had he instead requested a stay of proceedings. Accordingly, Jackson fails to demonstrate that the state court's decision was an unreasonable application of *Strickland* or was based on an unreasonable determination of the facts. Ground Six does not warrant relief.

Ground Seven

Jackson argues that trial counsel was ineffective in failing to move to suppress "the initial out-of-court identification of the petitioner through a photo pack." (Dkt. 1, p. 15). He claims that one of the victims erroneously identified him as the perpetrator with the gun. The state court denied his claim:

> In claim 7, Defendant argues that trial counsel was ineffective for failing to suppress the photo pack identification. Defendant writes that Mr. Long incorrectly identified the Defendant as the person holding the gun during the robbery. It was brought out during the trial that a photo pack was created with the Defendant's photo despite neither of the victims having seen the Defendant or having described someone close to the Defendant's appearance. Transcript at 218. Additionally, Mr. Long's identification was never brought out at trial. Transcript at 255-68. As such, Defendant has failed to establish prejudice.

(Dkt. 10, Ex. 12, p. 84).

The jury heard that police created a photopack including Jackson's photo, but that the photopack was not based upon the victims' descriptions of the perpetrators. (Dkt. 10, Ex. 2, Vol. I, p. 218). Furthermore, there was no evidence that Long identified Jackson from the photopack. Detective Bunch testified that he was mistaken in his initial belief that Long had identified Jackson. (*Id.*, p. 225). Accordingly, as there was no out-of-court identification to be suppressed, Jackson has

not established that the state court's rejection of his ineffective assistance claim involved an unreasonable application of *Strickland* or was based on an unreasonable determination of the facts.

<u>Grounds Nine Through Twelve</u>

In Ground Nine, Jackson argues that trial counsel was ineffective in failing to object to the State's trying him as a principal, and in Ground Eleven, Jackson contends that the State fundamentally erred in trying and convicting him as a principal. In Ground Ten, he claims that trial counsel was ineffective in failing to request an independent act jury instruction. In Ground Twelve, Jackson argues that the jury's verdict is contrary to the law and the weight of the evidence, and is a result of fraud upon the court.

Initially, Grounds Eleven and Twelve are not cognizable because Jackson does not assert any federal constitutional violations. *See* 28 U.S.C. § 2254(a) (federal habeas relief is only available for violations of the Constitution, laws, or treaties of the United States). Even if they could be read as raising federal claims, however, Grounds Eleven and Twelve, along with Grounds Nine and Ten, are procedurally defaulted and barred from review. When Jackson raised these claims in his December 2014 motion for postconviction relief, the state court denied the motion as successive. (Dkt. 1, p. 29, Dkt. 16-1). A petitioner's failure to comply with state procedural rules governing the proper presentation of a claim bars federal review of that claim in a subsequent federal habeas proceeding. *See Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir.2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts.").

The state court's application of an independent and adequate state bar results in a procedural default of these claims. Therefore, the claims can only be considered if Jackson establishes that either the cause and prejudice or fundamental miscarriage of justice exception applies to overcome the default. *See Harris v. Reed*, 489 U.S. 255, 262 (1989) ("[A]n adequate and independent finding of

procedural default will bar federal habeas review of the federal claim, unless the habeas petitioner can show" one of these exceptions). Jackson has not argued or demonstrated the applicability of either exception.

Alternatively, the claims are procedurally defaulted because they are unexhausted. Jackson agrees that he did not appeal the denial of these claims, which he was required to do to exhaust them. *See Leonard v. Wainwright*, 601 F.2d 807, 808 (5th Cir. 1979) ("In Florida, exhaustion usually requires not only the filing of a Rule 3.850 motion, but an appeal from its denial."). Because state procedural rules do not provide for second postconviction appeals, his claims are procedurally defaulted. *See Smith*, 256 F.3d at 1138. Jackson has not demonstrated that either the cause and prejudice or the fundamental miscarriage of justice exception applies to overcome the default. *See id.* Accordingly, the claims presented in Grounds Nine, Ten, Eleven, and Twelve are barred from review.

Any claims not specifically addressed in this Order have been determined to be without merit.

It is therefore **ORDERED** that:

1. Jackson's petition for writ of habeas corpus (Dkt. 1) is **DENIED**.

2. The Clerk is directed to enter judgment against Jackson and to close this case.

3. Jackson is not entitled to a certificate of appealability ("COA"). A petitioner does not have absolute entitlement to appeal a district court's denial of his habeas petition. 28 U.S.C. § 2253(c)(1). A COA must first issue. *Id.* "A [COA] may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, Jackson "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).  Jackson has not made this showing.  Because Jackson is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

      **ORDERED** in Tampa, Florida, on March 13, 2018.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Jermaine Jackson
Counsel of Record